No. 23-11023

IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

STEVE BIGGERS,

*Plaintiff - Appellant*,

v.

RON MASSINGILL,

*Defendant - Appellee*.

On Appeal from the
United States District Court for the
Northern District of Texas, Fort Worth Division
Civil Action No. 4:23-CV-00359

APPELLANT
STEVE BIGGERS'S BRIEF

Warren V. Norred
warren@norredlaw.com
NORRED LAW, PLLC
*Attorney for Appellant*

JANUARY 19, 2024

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Appellant:

Steve Biggers

Warren Norred
Texas Bar No. 24045094
Norred Law, PLLC
515 E. Border Street; Arlington, Texas 76010
O: (817) 704-3984; F: (817) 524-6686
warren@norredlaw.com
*Attorney of Record for Appellant Steve Biggers*

Appellee:

Ron Massingil

David Iglesias
Texas Bar No. 24051733
Iglesias Law Firm, PLLC
605 Chase Drive, Suite 8; Tyler, Texas 75701
O: (903) 944-7185; F: (903) 630-5338
david@iglesiaslawfirm.com
*Attorney of Record for Appellee Ron Massingil*

There are no other interested parties in this case as defined in 5th Cir. R. 28.2.1.

/s/Warren Norred
*Attorney of record for Appellant*

## STATEMENT REGARDING ORAL ARGUMENT

According to 5th C<sub>IR</sub>. R. 28.2.3, the Court would benefit from oral argument in this case. Counsel for both parties, if given the opportunity to appear before the Court, will be able to answer any questions the Court may have and expand on any reasoning that requires additional clarification.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................2

STATEMENT REGARDING ORAL ARGUMENT ............................................3

Table of Contents ........................................................................................................4

Table of Authorities ...................................................................................................5

Statement of Jurisdiction............................................................................................7

ISSUES PRESENTED..................................................................................................8

   1.   Has Biggers alleged an infringement of his First Amendment right to exercise free speech involving viewpoint discrimination in a limited public forum that is so clearly established that qualified immunity provides no defense to Massingil?....8

   2.   Does the doctrine of qualified immunity apply to a County Judge acting in a nonjudicial executive function while presiding over the public comment period of an open meeting?....................................................................................................8

Standard of Review ...................................................................................................9

Statement of the Case................................................................................................9

   I.   Factual Background ...........................................................................................9

   II.   Procedural Background .................................................................................12

Summary of the Argument......................................................................................12

Argument....................................................................................................................13

   I.   Response to First Issue Presented: Massingil cannot claim Qualified Immunity allows him to discriminate on the basis of viewpoint. ........................13

      A.Background of Qualified Immunity .......................................................13

      B.The qualified immunity defense asserted by Massingil must be denied because the right to exercise free speech without infringement based on viewpoint discrimination is clearly established. .........................................18

   II.   Response to Second Question Presented: Qualified Immunity should not apply to County Judges acting in a nonjudicial executive function and presiding over public comment periods of open meetings..................................................25

   III.  Additionally, the County Court's public comment policy is not narrowly tailored facially and alternatively, unconstitutional as-applied............................26

Conclusion ................................................................................................................30

Certificates ................................................................................................................31

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. al-Kidd*, 563 U.S. 731, 732 (2011) .......................................................20

*Brandenburg v. Ohio*,
   395 U.S. 444, 447, 89 S. Ct. 1827, 23 L. Ed. 2d 430 (1969)............................23

*Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993)................................................15

*Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 346 (5th Cir. 2001) ......................21

*Crawford-El v. Britton*, 118 S. Ct. 1584, 1591 (1998) ..................................... 13, 20

*Evans v. Herman*, No. 4:22-CV-2508,
   2023 U.S. Dist. LEXIS 110605 (S.D. Tex. 2023) ...................................... 20, 21

*Forrester v. White*, 484 U.S. 219, 225–26 (1988) ..................................................15

*Good News Club v. Milford Central School,* 533 U.S. 98 (2001) ..........................22

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)....................................................17

*Heaney v. Roberts*, 846 F.3d 795, 798 (5th Cir. 2017)............................................21

*Ledezma v. Laredo Hous. Auth.*, No. 04-19-00563-CV,
   2021 Tex. App. LEXIS 2439 (Tex. App. Mar. 31, 2021) ................................24

*Little v. Barreme*, 6 U.S. (2 Cranch) 170 (1804) ...................................................16

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803) ......................................14

*Myers v. Anderson*, 238 U.S. 368 (1915)...............................................................16

*Pearson v. Callahan,* 555 U.S. 223 (2009)............................................................18

*Pierson v. Ray*, 386 U.S. 547, 554–55 (1967) ................................................. 15, 16

*Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021) ....................................20

*Ryan v. Grapevine—ColleyvilleIndep. Sch. Dist.*, No. 4:21-cv-1075-P,
   2023 U.S. Dist. LEXIS 41478, at *7 (N.D. Tex. 2023)........................ 13, 19, 24

*Scheuer v. Rhodes*, 416 U.S. 232, 247–48 (1974) ..................................................17

*Sims v. City of Madisonville*, 894 F.3d 632, 638 (5th Cir. 2018) ...........................18

*Steinburg v. Chesterfield County Planning Comm'n*,
   527 F.3d 377, 384-85 (4th Cir. 2008). ...........................................................23

*Terminiello v. City of Chicago*,
    337 U.S. 1, 4, 69 S. Ct. 894, 93 L. Ed. 1131 (1949)............................................23

*True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009) ....................................................10

*United States v. Lanier*, 520 U.S. 259, 271 (1997)....................................................18

*Virginia v. Black,*
    538 U.S. 343, 359, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003)..........................23

*Wenthold v. City of Farmer's Branch,* 2012 WL 467325
    (N.D. Tex. Feb. 14, 2012) 2012, aff'd, 532 F. App'x 474 (5th Cir. 2013) .........19

*White v. Pauly*, 137 S. Ct. 548, 552 (2017) .............................................................17

*Zadeh v. Robinson*, 902 F.3d 483, 498 (5th Cir. 2018) ............................................18

## Statutes

28 U.S.C. § 1291 ........................................................................................................8

42 U.S.C. § 1983 ......................................................................................................15

Tex. Gov't Code § 551 ....................................................................................... 22, 24

## Other Authorities

2022 Texas Open Meetings Act Handbook ..............................................................22

Article 5, Section 18(b) of the Texas Constitution ..................................................26

Boatright, Jason, Texas Bar Association
    "Creating A System An Overview Of The Spanish Origins of Texas Law" ......27

Court Structure of Texas Descriptive Outline, September 1, 1998 ........................26

## STATEMENT OF JURISDICTION

Pursuant to 28 U.S.C. § 1291, this Court has jurisdiction over this appeal because it originates from a final decision in the United States District Court for the Northern District of Texas. The final decision is the district court's Order granting Respondent's Motion to Dismiss and entry of Final Judgment on September 08, 2023. ROA.291.

# ISSUES PRESENTED

1. Has Biggers alleged an infringement of his First Amendment right to exercise free speech involving viewpoint discrimination in a limited public forum that is so clearly established that qualified immunity provides no defense to Massingil?

2. Does the doctrine of qualified immunity apply to a County Judge acting in a nonjudicial executive function while presiding over the public comment period of an open meeting?

## STANDARD OF REVIEW

An appellate court employs a *de novo* standard when reviewing a trial court's order granting a Rule 12(b)(6) motion to dismiss, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff[.]" *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009).

## STATEMENT OF THE CASE

### I. Factual Background

On February 9, 2021, the Commissioner's Court passed the *Rules of Procedure, Conduct and Decorum at Meetings of the Hood County Commissioners Court* to governs public input during its meetings. ROA.111-112, 233-236. The rules allow agenda-related comments at all meetings, but allow citizens to comment on non-agenda items only during the court's first meeting of the month. Additionally, the rules included the following prohibition speech:

> F.    It is not the intention of the Hood County Commissioners' Court to provide a public forum for the demeaning of any individual or group. Neither is it the intention of the Court to allow a member (or members) of the public to insult the honesty and/or integrity of the Court, as a body, or any member or members of the Court, individually or collectively. Accordingly, profane, insulting or threatening language directed toward the Court and/or any person in the Court's presence and/or racial, ethnic, or gender slurs or epithets will not be tolerated. **These Rules do not prohibit public criticism of the Commissioners' Court, including criticism of any act, omission, policy, procedure, program, or service.**

ROA. 233-236. ("Public Comment Rule" or "Public Comment Policy").[1]

---

[1] This language is similar to verbiage approved in *Ryan v. Grapevine—Colleyville Indep. Sch. Dist.*, No. 4:21-cv-1075-P, 2023 U.S. Dist. LEXIS 41478, at *7 (N.D. Tex. 2023).

On March 8, 2022, the first meeting of the Commissioners Court in March, Appellant Biggers spoke and gave each commissioner a copy of the U.S. and Texas constitutions. ROA.110-122.

Biggers spoke again on March 22, on an agenda item relating to septic tanks. After Biggers concluded his remarks and sat down, Massingill began bantering with Biggers. Biggers eventually asked the court to take a vote, and Massingill told Biggers that he "came close to being out of order," and, "You can't tell us when to vote. We will vote at the proper time." ROA.112.

On April 26, 2022, Biggers referred to former Commissioner Ron Cotton by name while speaking about a specific agenda item. ROA.112. Appellee Massingill interrupted Biggers, accused him of attacking Cotton, then directed Sheriff Deeds to escort Biggers out of the meeting, refusing to allow Biggers to finish his remarks within his remaining time. During that same meeting, another speaker criticized Commissioner Eagle and made allegations of a violent attack; Massingill allowed the speech critical of Eagle. ROA.112.

Massingill's pattern of hostility toward Biggers continued during the October 25 meeting, when he singled out Biggers from the audience and criticized him for the way he runs Hood County Republican Party meetings, despite there being no items on the agenda pertaining to that issue. ROA.113.

Massingill was recorded with others on a "hot mic" just prior to the meeting of the Commissioners Court held November 8, 2022 (the "November Recording"). During his recorded comments, Massingill demeaned Biggers and his church, and bragged about throwing Biggers out of the court. ROA.113.

On December 13, 2022, during the first regular meeting of the month of the Hood County Commissioners Court, the Public Comment Rule gave Biggers five minutes to speak to the court about non-agenda topics for five minutes. As he began giving testimony regarding the November Recording of Massingill's comments, Biggers was abruptly interrupted by Massingill and threatened with removal. Biggers was not allowed to continue his remarks or play the November Recording of Massingill speaking about Biggers and other county residents. ROA.113.

On January 10, 2023, the first regular meeting of the Commissioners Court of the month, Biggers tried to speak once more during the open public comment section to address the November Recording. Within seconds, Massingill commanded Sheriff Deeds to remove Biggers from the meeting without cause. Biggers was unable to finish his remarks, though he had time remaining. ROA.113.

Appellant Biggers did not demean any individual or group, use profane, insulting, or threatening language, or employ a racial, ethnic, or gender slur or epithets. Appellant criticized Massingill's actions, a permissible topic under the Public Comment Rule and Texas state law. ROA.113-114.

## II. Procedural Background

Appellant filed his Original Complaint and Application for Preliminary Injunctive Relief on April 14, 2023. The Original Complaint was superseded when Appellant filed his First Amended Complaint on July 5, 2023. ROA.110. On June 13, 2023, Appellee filed a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ROA.194.

On September 08, 2023, the district court issued an opinion and order granting Appellee's Motion to Dismiss and entered final judgment. ROA.285-291.

On October 03, 2023, Appellant filed his Notice of Appeal. ROA.292.

## SUMMARY OF THE ARGUMENT

The district court erred in granting Appellee's Motion to Dismiss because Appellee engaged in viewpoint discrimination as applied to Appellant, violating the First Amendment, and abrogating qualified immunity.

Qualified immunity protects governmental officers with discretionary authority from liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Crawford-El v. Britton*, 118 S. Ct. 1584, 1591 (1998). Viewpoint discrimination is "a clearly established violation of the First Amendment in any forum. *See Ryan v. Grapevine—Colleyville Indep. Sch. Dist.*, No. 4:21-cv-1075-P, 2023 U.S. Dist. LEXIS 41478, at \*7 (N.D. Tex. 2023).

In this case, Appellee's animosity toward Appellant is clearly demonstrated by Appellee's choice to remove Appellant due to Appellant's viewpoint. Appellant did not engage in any threatening or fighting words, nor did he disobey the County Court's public comment policy. The County Court's public policy is not narrowly tailored. Appellant did not engage in any illegal activity, but Appellee still removed Appellant for his viewpoint.

No reasonable officer would say that Appellee can arbitrarily silence and remove members of the public who are legally complying with the Court rules because of their viewpoint. The district court erred in granting Appellee's motion to dismiss because the County Court's public comment policy is not narrowly tailored and Appellee was engaged in an executive nonjudicial function that does not permit qualified immunity. Further, Appellee clearly engaged in unreasonable viewpoint discrimination and therefore is not entitled to qualified immunity as applied.

## ARGUMENT

I. **Response to First Issue Presented: Massingil cannot claim Qualified Immunity allows him to discriminate on the basis of viewpoint.**

A. Background of Qualified Immunity

Courts have long recognized that "[t]he government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803).

Qualified Immunity arises from 42 U.S.C. § 1983, which has existed in one form or another since the passage of the 1871 Ku Klux Klan Act, passed by the Reconstruction Congress along with the other Enforcement Acts to secure civil rights in the post-bellum American South and to give teeth to the Fourteenth Amendment to the U.S. Constitution. The statute states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

The statute generates a private cause of action against state level actors who breach citizens' constitutional rights.

The Supreme Court has long affirmed that statutes generally are not interpreted so as to extinguish by implication longstanding legal defenses available at common law. *See Forrester v. White*, 484 U.S. 219, 225–26 (1988). The Supreme Court has framed the issue raised by application of qualified immunity as whether or not "certain immunities were so well established in 1871, when § 1983 was enacted, that 'we presume that Congress would have specifically so provided had it wished to abolish' them." *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993) (quoting *Pierson v. Ray*, 386 U.S. 547, 554–55 (1967)).

Historical legal scholarship has long recognized that, in the Founding Era and continuing through the reconstruction period, constitutional claims have emerged through litigation to protect common law rights and exclude good-faith defenses to constitutional violations, even allowing for strict liability for constitutional violations.[2] *See e.g. Little v. Barreme*, 6 U.S. (2 Cranch) 170 (1804) (holding a Navy Captain liable for constitutional violations after unlawfully seizing a ship that had embarked from a French port on orders from President John Adams). This strict liability for constitutional violations persisted throughout the 19th century.[3]

Since its adoption, the Supreme Court has continuously held that Section 1983 does not incorporate freestanding good-faith defenses. *See e.g. Myers v. Anderson*, 238 U.S. 368 (1915) (holding state election officers liable for violating a state statute in violation of the Fifteenth Amendment's ban on racial discrimination at the polls).

The modern doctrine of qualified immunity emerged from the Supreme Court's 1967 decision in *Pierson v. Ray*, 386 U.S. 547 (1967) (holding that a police

[2] Schweikert, Jay R. "Qualified Immunity: A Legal, Practical, and Moral Failure," Policy Analysis no. 901, Cato Institute, Washington, DC, September 14, 2020. https://doi.org/10.36009/PA.901; Akhil Reed Amar, "Of Sovereignty and Federalism," Yale Law Journal 96, no. 7 (1987): 1506; James E. Pfander, *Constitutional Torts and the War on Terror* (New York: Oxford University Press, 2017), pp. 3–14, 16–17; David E. Engdahl, "Immunity and Accountability for Positive Governmental Wrongs," *University of Colorado Law Review* 44 (1972): 14–21; and Ann Woolhandler, "Patterns of Official Immunity and Accountability," *Case Western Reserve Law Review* 37, no. 3 (1986): 414–22; William Baude, "Is Qualified Immunity Unlawful?," *California Law Review* 106 (2018): 51–61.

[3] Engdahl, "Immunity and Accountability for Positive Governmental Wrongs," p. 19; Max P. Rapacz, "Protection of Officers Who Act Under Unconstitutional Statutes," *Minnesota Law Review* 11 (1927): 585.

officer could raise a good-faith belief in the legality of a statute defense in a false arrest claim). Since that time, the Supreme Court has issued multiple opinions which have worked to establish the boundary between conduct that warrants qualified immunity and conduct for which an actor is held responsible.

In 1974 the Supreme Court eliminated the common-law good-faith defense for tort claims and extended qualified immunity's good faith defense to all executive offers for any "acts performed in the course of official conduct." *Scheuer v. Rhodes*, 416 U.S. 232, 247–48 (1974). Eight years later, the Supreme Court revised qualified immunity into its modern form by holding that defendants would be entitled to qualified immunity whenever "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Application of qualified immunity to a given fact pattern hinges on the application of the "clearly established law" standard. The Supreme Court has determined that "clearly established law" cannot be defined at a high level of generality; instead, the law must be "particularized" to the facts of the case. *White v. Pauly*, 137 S. Ct. 548, 552 (2017).

Critically, the Supreme Court has repeatedly acknowledged that it does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741

(2011). Further, the clearly established law standard "does not require a case directly on point for a right to be clearly established. *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *White*, 137 S. Ct. at 551). And "general statements of the law are not inherently incapable of giving fair and clear warning." *White*, 137 S. Ct. at 552 (quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997)).

Additionally, the Supreme Court has held that lower courts have the discretion to grant qualified immunity on the ground that the law was not clearly established without actually deciding the threshold question of whether the law was violated in the first place. *Pearson v. Callahan,* 555 U.S. 223 (2009).

However, this Court has recently noted that this discretion creates a vicious doom loop where courts decline to determine whether a law is clearly established, so laws never become clearly established. *See Sims v. City of Madisonville*, 894 F.3d 632, 638 (5th Cir. 2018) (per curiam) ("This is the fourth time in three years that an appeal has presented the question whether someone who is not a final decisionmaker can be liable for First Amendment retaliation.… Continuing to resolve the question at the clearly established step means the law will never get established.") *See also Zadeh v. Robinson*, 902 F.3d 483, 498 (5th Cir. 2018) (Willett, J., concurring dubitante) ("[T]he 'clearly established' standard [is] neither clear nor established among our Nation's lower courts.").

Indeed, empirics bear out the assertion that "clearly established law" in the context of rights violations are not being established. A 2015 study by Nielson and Walker, which covered 844 qualified immunity federal appellate cases from 2009 to 2012, found that courts decided the merits question first 63% of the time, and among those, in 92% of instances decided that there was no constitutional violation.[4]

Distinguishing from *Pearson,* which involved a Fourth Amendment challenge against Police officers involving questions of law and fact (555 U.S. at 231), this case involves viewpoint discrimination which is "a clearly established violation of the First Amendment in any forum." *See Ryan*, 2023 U.S. Dist. LEXIS 41478, at *7.

B. <u>The qualified immunity defense asserted by Massingil must be denied because the right to exercise free speech without infringement based on viewpoint discrimination is clearly established.</u>

It is uncontroversial that courts "discussing public comment periods at government meetings have routinely found that the governing body may . . . prevent disruption . . . [and possess a] great deal of discretion" *Wenthold v. City of Farmers Branch*, No. 3:11-CV-0748-B, 2012 U.S. Dist. LEXIS 18452, at *9 (N.D. Tex. Feb. 14, 2012) aff'd, 532 F. App'x 474 (5th Cir. 2013) (per curiam). There is no dispute that a Commissioners' Court may hold the public to a standard of civility. However, the Commissioners' Court is a limited public forum. Appellee should not have been

---

[4] Aaron L. Nielsen and Christopher J. Walker, "The New Qualified Immunity," *South. Cal. Law Rev.* 89 (2015): 34.

allowed to claim qualified immunity as a defense because well-established law prevents him from infringing the right to free speech in a limited public forum based on viewpoint discrimination. Irrespective of whether a county judge may consistently infringe free speech, every county judge should know that whatever the rule is, it should be applied consistently to all speakers and not only to those whose viewpoints differ from the judge's.

Qualified immunity protects governmental officers with discretionary authority from liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Crawford-El v. Britton*, 118 S. Ct. 1584, 1591 (1998).

When a defendant invokes qualified immunity [in a 12(b)(6) motion], the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Evans v. Herman*, No. 4:22-CV-2508, 2023 U.S. Dist. LEXIS 110605, at *5 (S.D. Tex. 2023) (quoting *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021)).

A government official's conduct violates clearly established law when at the time of the challenged conduct "[t]he contours of [a] right [are] sufficiently clear," and every "reasonable official would [have understood] that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 732 (2011)*(internal citation omitted).

As already stated, every county judge is aware that he should be even-handed in performing his duties as a presiding officer of a public meeting. Not only is this common sense, it has also been the black-letter law for decades of litigation in the United States: "[w]hen a public body establishes a limited public forum of this sort, that body may restrict the expression that takes place within the forum so long as the restriction (1) does "not discriminate against speech on the basis of viewpoint" and (2) is "reasonable in light of the purpose served by the forum." *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 346 (5th Cir. 2001) (internal citations omitted).

In *Evans*, the court concluded, "[g]overnment discrimination against speech based on the viewpoint expressed has long been held to violate the Constitution," *Evans*, 2023 U.S. Dist. LEXIS 110605, at *7-8 (internal citations omitted).

Beyond these general rules of qualified immunity and viewpoint discrimination, when qualified immunity depends on disputed issues of fact, such as in allegations of viewpoint discrimination, those issues must be determined by the jury. *Heaney v. Roberts*, 846 F.3d 795, 798 (5th Cir. 2017) (overturning summary judgment of a trial court's dismissal of First Amendment claims by a plaintiff ejected from a city council's "limited public forum" meeting).

Since Appellant alleged viewpoint discrimination, the district court should have allowed the jury to resolve relevant factual allegations, and dismissal of his claims at that stage was inappropriate. *See id.* at 802 (disallowing dismissal on

disputed facts, though allowing dismissal when only reasonable topic and time restrictions challenged).

Lastly, Appellee is a member of a governmental body subject to the Texas Open Meetings Act ("TOMA"), Appellee is required to participate in education training sessions pursuant to section 551.005(a) of the Texas Government Code. This training is provided by a video on the Attorney General's website which any person can view, and public officials may download the certificate complying with § 551.005(c) to show that the official has completed the course.[5] Based on that training, Appellee should have known that he must allow all members of the public to address and give comment, irrespective of viewpoint, as detailed in the 2022 Texas Open Meetings Act Handbook, at 46, and § 551.007(b).[6] Appellant asserts that the training required under TOMA is part of the "clearly established law" of which Appellee is obligated to be aware.

A limited forum is a type of a designated public forum. Here, the government limits access to a designated public forum to certain classes or types of speech. The Supreme Court has instructed that in a "limited forum," the government may discriminate against classes of speakers or types of speech. *Good News Club v.*

---

[5] The site currently used by the Texas Attorney General for this purpose is located at: https://www.texasattorneygeneral.gov/open-government/governmental-bodies/pia-and-oma-training-resources/open-meetings-act-training (last assessed July 5, 2023).
[6] 2022 Texas Open Meetings Handbook, p. 46 (accessed July 5, 2023), https://www.texasattorneygeneral.gov/sites/default/files/files/divisions/open-government/openmeetings_hb.pdf#46

*Milford Central School*, 533 U.S. 98 (2001). However, the government is still prohibited from engaging in viewpoint discrimination.

Even an unruly speaker at a public hearing can remain at a public meeting as long as he speaks in turn and on topic, and he cannot be censored based on viewpoint under the limited public forum doctrine. *See, e.g. Steinburg v. Chesterfield County Planning Comm'n*, 527 F.3d 377, 384-85 (4th Cir. 2008).

Texas's Fourth Court of Appeals in San Antonio recently opined on the nature of disruption under federal case law in limited public forums, where it evaluated a similar case and provided the following persuasive argument and conclusions:

> The undisputed evidence at the bench trial shows that at the tenants' council meeting in November 2016, the complained-of conduct by Ledezma, including her comments and her attempts to have other tenants sign a petition, related to Ledezma advocating the board for a change in policies at the housing complex. Thus, the undisputed evidence shows that Ledezma's conduct related to matters of public concern. Moreover, while there was evidence that Ledezma was disrespectful in making her comments, there was no evidence that she used "true threats," words of "incitement," or "fighting words*." See Virginia v. Black*, 538 U.S. 343, 359, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003) (explaining that the First Amendment does not protect "fighting words"—"those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction"—or "true threats"—"those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals"); *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S. Ct. 1827, 23 L. Ed. 2d 430 (1969) (explaining "the principle that the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action"). That other tenants were

angry at Ledezma's comments are not sufficient to justify a violation of her rights under the First Amendment. *See Terminiello v. City of Chicago*, 337 U.S. 1, 4, 69 S. Ct. 894, 93 L. Ed. 1131 (1949) (noting that free speech "may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger"). Therefore, we conclude Ledezma's conduct is protected by the First Amendment.

*Ledezma v. Laredo Hous. Auth.*, No. 04-19-00563-CV, 2021 Tex. App. LEXIS 2439, at *26-28 (Tex. App. Mar. 31, 2021).

In the facts at bar, there can be no doubt that Appellant's comments were of public concern, specifically concerning the comportment of Appellee Judge Massingill and former commissioner Ron Cotton. Appellant complied with the Court's public comment policy and used no threats or fighting words.

Additionally, the district court's analysis failed to wrestle with grapple with the Texas Government Code's requirement that "a governmental body may not prohibit public criticism of the governmental body, including criticism of any act, omission, policy, procedure, program, or service." Tex. Gov't Code § 551.007. The Government Code does not state that a citizen may only criticize the body as a whole or allow prior restraint of criticism of individuals like the prior restraint and expulsion from the Court employed by Appellee.

As cited already, the Northern District of Texas held that a meeting rule similar to that at issue served as grounds for holding government officials accountable in 2023, preventing summary judgment as applied. *See Ryan*, 2023 U.S.

Dist. LEXIS 41478, at *7 (describing viewpoint discrimination as "a clearly established violation of the First Amendment in any forum.).

The Hood County Public Comment Rule specifically authorizes and protects criticism of the commissioners, and does not exclude from criticism the county judge, or require critics to refrain from individual assessments:

> F.    It is not the intention of the Hood County Commissioners' Court to provide a public forum for the demeaning of any individual or group. Neither is it the intention of the Court to allow a member (or members) of the public to insult the honesty and/or integrity of the Court, as a body, or any member or members of the Court, individually or collectively. Accordingly, profane, insulting or threatening language directed toward the Court and/or any person in the Court's presence and/or racial, ethnic, or gender slurs or epithets will not be tolerated. **These Rules do not prohibit public criticism of the Commissioners' Court, including criticism of any act, omission, policy, procedure, program, or service.**

ROA.234.

Appellee Massingill retaliated against Appellant for his speech criticizing Appellee Massingill and former Commissioner Cotton, though another member of the audience, at the same meeting, criticized Commissioner Eagle with impunity. Appellant did not demean Appellee, insult the honesty or integrity of the Court or Appellee, or use profane, insulting, or threatening language toward the Court or Appellee, and used no slurs. Appellant's comments were unquestionably public criticism allowed under the Public Comment Rule, and made following all the rules of decorum, but Appellee removed Appellant.

Appellee's actions were unreasonable and viewpoint discrimination clearly violates Appellants' First Amendment Rights. *See Ryan,* 4:21-cv-1075-P, 2023 U.S. Dist. LEXIS 41478, at \*7; *see also* ROA.110-184.

There is no way to credibly distinguish between the facts in *Ryan* and the facts at issue here. 2023 U.S. Dist. LEXIS 41478, at \*7. In both instances a government official violated the first amendment by engaging in viewpoint discrimination against a citizen exercising first amendment rights. There is no plausible rationale for applying qualified-immunity to county judges in limited public forums while forbearing to do so to trustees in school board meetings.

## II. Response to Second Question Presented: Qualified Immunity should not apply to County Judges acting in a nonjudicial executive function and presiding over public comment periods of open meetings.

Appellee Judge Massingill is a county judge of a constitutional County Court. As the Texas Court's Structure of Texas Descriptive Outline explains, "the Texas Constitution establishes one county court in each of the 254 counties of the State, but not all such courts exercise judicial functions. In populous counties, the 'county judge' may devote full time to the administration of county government."[7] Indeed, Article 5, Section 18(b) of the Texas Constitution establishes the executive role, "[t]he County Commissioners…with the County Judge as presiding officer, shall

---

[7] Court Structure of Texas Descriptive Outline, September 1, 1998.
https://www.txcourts.gov/All_Archived_documents/JudicialInformation/pubs/AR98/JB/ctstr98.htm.

compose the County commissioners Court, which shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State."[8]

During the events relevant to this case, Appellee was presiding over a public hearing, to wit, a limited public forum where qualified immunity does not protect him from liability arising from his First Amendment violations per *Ryan.* 2023 U.S. Dist. LEXIS 41478, at *7. Further, Appellee engaged in viewpoint discrimination that violated the First Amendment as applied in this case, regardless of the forum. ROA.110-184.

### III. Additionally, the County Court's public comment policy is not narrowly tailored facially and alternatively, unconstitutional as-applied.

Though the District Court did not reach the merits of this case, Appellant also offers this merit-based argument against a finding of qualified immunity, herein arguing that the Public Comment Rule is facially unconstitutional based on a strict scrutiny applied to a rule that allows viewpoint discrimination, or in the alternative, unconstitutional as-applied to Biggers.

---

[8] Boatright, Jason; Feature: Creating A System: An Overview of the Spanish Origins of Texas Law., 83 Tex. B. J. 392-93 ("Texas law is unique. It uses the common law of England as a rule of decision in court, but it was a jurisdiction of the civil law of Spain, France, and Mexico for over 300 years and it retains many elements of those laws today… Spanish law required that alcalde courts be established for the new settlers…. The Texas county judge shares several characteristics with the Spanish and Mexican alcalde, including the dual possession of both executive and judicial powers. And the Texas district judge is a direct descendant of the alcalde, presiding over courts that had essentially the same jurisdiction as the Spanish and Mexican judicial officer did.")

A. The County Court's public comment policy is unconstitutional as not narrowly tailored facially.

A policy is not "narrowly tailored" because it "burden[s] substantially more speech than is necessary to further the government's legitimate interests." *McCullen v. Coakley,* 573 U.S. 464, 466, 134 S. Ct. 2518, 2523 (2014). "To meet the requirement of narrow tailoring, the government must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier. A painted line on the sidewalk is easy to enforce, but the prime objective of the First Amendment is not efficiency." *Id.*

"We have consistently applied strict scrutiny to such content-based regulations of speech." *Lorillard Tobacco Co. v. Reilly,* 533 U.S. 525, 574, 121 S. Ct. 2404, 2432 (2001). "Speaker-based laws demand strict scrutiny when they reflect the Government's preference for the substance of what the favored speakers have to say (or aversion to what the disfavored speakers have to say)". *See Turner Broad. Sys. v. FCC*, 512 U.S. 622, 658, 114 S. Ct. 2445, 2467 (1994).

The County' Court's public comment policy is highly subjective and lends itself to broad interpretation by the County Judge. ROA.19-22. There is no definition for "demeaning", "insult the honesty and/or integrity of the Court", "profane", "insulting", "threatening", or "public criticism". ROA.19-22. The Court's policy states that violations of the rules may result in the following sanctions: "1)

Cancellation of a speaker's remaining time; 2) Removal from the Commissioners' Courtroom; 3) Contempt Citation; and/or 4) such other civil and/or criminal sanctions as may be authorized under the Constitution, Statutes and Codes of the State of Texas." ROA.19-22. The Court's policy does not state the burden for each sanction to apply. ROA.19-22. For example, one does not know whether being "insulting" will lead to cancellation of time or lead to removal. Or another example, if someone is participating in "public criticism", the policy does not specifically state the corresponding sanction, whether it is appropriate to issue a contempt citation or removal. The policy is simply not narrowly tailored.

A similar case in the Northern District Court of Georgia decided that a similar public comment policy was facially unconstitutional:

> "public participation policy's requirement that members of the public "conduct themselves in a respectful manner" most logically seems to mandate that they show high or special regard or esteem towards Board members and other meeting attendees and refrain from insulting them or being offensive, rude, insulting, or abusive towards them. Such a requirement is viewpoint-based and thus facially unconstitutional.

*Mama Bears of Forsyth Cty. v. McCall*, 642 F. Supp. 3d 1338, 1350 (N.D. Ga. 2022).

Two Supreme Court cases, *Matal v. Tam*, 137 S. Ct. 1744, 198 L. Ed. 2d 366 (2017) and *Iancu v. Brunetti*, 139 S. Ct. 2294, 2299-300, 204 L. Ed. 2d 714 (2019), as described in *Ison v. Madison Local Sch. Dist. Bd. of Educ.*, 3 F.4th 887, 894 (6th Cir. 2021), further support the proposition that the government may not censor speech merely because it is "offensive to some".

Because the County Court's public comment policy is viewpoint-based and not narrowly tailored, it is facially unconstitutional. *See McCullen,* 573 U.S. at 466; *Lorillard,* 533 U.S. at 574; *FCC*, 512 U.S. at 658; *Mama Bears*, 642 F. Supp. 3d at 1350; *Matal*, 137 S. Ct. at 1744; *Ison,* 3 F.4th at 894; ROA.233-236.

### B. In the alternative, the Hood County Commissioners Court's public comment policy is unconstitutional as applied.

The County Court applied its public comment policy unconstitutionally against Appellant. Appellee clearly participated in viewpoint discrimination.

Appellant was speaking his allotted time during the December 13, 2022, Commissioners' Court meeting he presented the recording of the County Judge on a hot mic when the County Judge interrupted him and repeated a portion of the Public Comment Rule, stating, "it is not the intention of the Hood County Commissioner's Court to provide a public forum for the demeaning of any individual or group. *See* ROA.239.[9] Neither is it the intention of the Court to allow a member of the public to insult the honesty or integrity of the Court as body or members of the Court…" ROA.239. Yet, before the County Judge interrupted Appellant, Appellant was merely playing a record of the County Judge's own statements. ROA.239 The County Judge did not explain how playing a recording of his own statements as "insult[ing] the honesty or integrity of the Court." ROA.239. The County Judge

---

[9] These statements were confirmed by Appellee/Defendant in his motion to dismiss. ROA.66. Appellee/Defendant provided an actual recording of the December 13th meeting, which has been confirmed as part of the record available to the Court.

continued to interrupt Appellant, telling him to take Appellee to court if Appellant had an issue. ROA.239. Appellant sought clarification from the Judge and was met with "Sherrif if he says one more word, I want you to remove him from this court" before throwing him out. ROA.239. Dave Eagle, Commissioner for Precinct 4, attempted to point out that the public comment policy allowed for criticism of the Commissioners' Court, but Appellee could not face the music. ROA.239.

Because Appellee did not properly follow the County Court's public comment policy and discriminated against Appellant's viewpoint, Appellee's actions are unconstitutional as applied. *See McCullen,* 573 U.S. at 466; *Lorillard,* 533 U.S. at 574; *FCC*, 512 U.S. at 658; *Mama Bears*, 642 F. Supp. 3d at 1350; *Matal*, 137 S. Ct. at 1744; *Ison,* 3 F.4th at 894; ROA.233-245.

## CONCLUSION CONCERNING RELIEF SOUGHT

The district court's final judgment based on qualified immunity should be overruled and remanded for further proceedings, and if the Court deems it appropriate, an injunction preventing enforcement of the Public Comment Rule.

Respectfully submitted,

*/s/Warren V. Norred*
Warren V. Norred
Texas Bar No. 24045094
NORRED LAW, PLLC

# CERTIFICATES

CERTIFICATE OF SERVICE
FED. R. APP. P 25(D)
I certify that on January 19, 2024, the foregoing instrument has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure on all registered counsel of record, and has been transmitted to the Clerk of the Court, including:

David Iglesias, david@iglesiaslawfirm.com
James Evans III, jim@iglesiaslawfirm.com

/s/ Warren V. Norred
Warren V. Norred

CERTIFICATE OF COMPLIANCE,
FED. R. APP. P. 32(G)(1), 5TH CIR. R. 32.3, FED. R. APP. P. 28(A)(10)
1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7), which limits a principal brief because, excluding the parts of the document exempted by Fed. R. App. P. 32(f); this document contains 5369 words and 24 pages.

2. This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in a proportional-spaced typeface using Microsoft Word with a 14-point Times New Roman font.

/s/ Warren V. Norred
Warren V. Norred